[No. 12094.    Department One.    January 7, 1915.]

WALTER M. TOLBERT, *Appellant*, v. MODERN WOODMEN OF AMERICA, *Respondent*.[1]

BENEFICIAL ASSOCIATIONS — FOREIGN CORPORATIONS — JURISDICTION OF COURTS—CANCELLATION OF CERTIFICATE. The courts of this state have no jurisdiction to interfere with the internal affairs of a foreign beneficial association, by enjoining the officers of the society, at its headquarters in the state where it exists as a corporation, from taking action in the threatened cancellation of the certificate of a member of the society in this state, notwithstanding the society has an authorized agent in this state upon whom service of process can be made, under 3 Rem. & Bal. Code, § 6059-222.

Appeal from a judgment of the superior court for King county, Albertson, J., entered January 27, 1914, dismissing an action to enjoin the cancellation of a benefit certificate, after a trial to the court. Affirmed.

*Elias A. Wright*, for appellant.

*Benj. D. Smith* and *Ralph Simon*, for respondent.

PARKER, J.—The plaintiff, Walter M. Tolbert, commenced this action in the superior court for King county, seeking an injunction to prevent the defendant, Modern Woodmen of America, from canceling his benefit certificate which evidences

[1]Reported in 145 Pac. 183.

his membership and insurance in the defendant society.   The plaintiff has appealed from the judgment of the superior court denying the relief prayed for.

Respondent is an incorporated fraternal beneficiary society, organized and existing under the laws of the state of Illinois, with its principal place of business at the city of Rock Island, in that state.   It has local branches called camps in the several states of the Union, one of which is at Seattle, in this state.   In May, 1910, appellant made application for, and was admitted to, membership in the Seattle camp, when a benefit certificate was issued to him by the proper officers of the society at Rock Island, evidencing his membership in the society and the right of his beneficiary named in the certificate to participate in the benefit fund of the society to the amount of one thousand dollars in case of his death while a member in good standing.   On March 21, 1913, the head clerk of the society at Rock Island, evidently acting at the instance of the executive council of the society, gave notice in writing to appellant as follows:

"Modern Woodmen of America.
"A Fraternal Beneficiary Society.
            "Rock Island, Ills., Mar. 21, 1913.
"Mr. Walter M. Tolbert,
    "Box 16, R. D. No. 2,
        "Seattle, Washington.
"Esteemed Neighbor:   Complaint has been filed at this office to the effect that at the time of the Head Physician's approval of your application for beneficial membership in this society, you were past 45 years of age.   You are, therefore, notified that the Executive Council of this society will be in session in its council chamber in the head office building of the society, at Rock Island, Ill., on the 17th day of April, 1913, at 10 o'clock a. m., on or as early thereafter as possible, at which time and place you may appear, in person or otherwise, to show cause why your benefit certificate should not be declared to be absolutely null and void, and to have been so at all times, on account of your having been past 45 years

old at the time of the head physician's approval of your
application for beneficial membership in this society.

"Fraternally yours,

"C. W. Hawes, Head Clerk, M. W. of A."

This notice was received by appellant at Seattle in due
course of mail a few days later. Evidently deeming this a
threat by respondent to cancel his benefit certificate, appel-
lant, on March 31, 1913, several days before the time ap-
pointed for the hearing before the council, as stated in the
notice, commenced this action in the superior court for King
county, seeking to enjoin the cancellation of his benefit cer-
tificate. It is to be noticed that the injunctive relief sought
is against alleged threatened action of officers of the society
at its headquarters, in the state of Illinois, under whose laws
it exists as a corporation.

We are constrained to hold that the denial of relief and
judgment of dismissal rendered in the superior court must be
affirmed if for no other reason than that of want of jurisdic-
tion in the courts of this state to interfere with the internal
affairs of a foreign corporation; since the alleged threatened
act sought to be restrained would be but the exercise of
claimed authority of the officers of the society at its home
office, beyond the territorial jurisdiction of the courts of this
state. In *North State Copper & Gold Min. Co. v. Field*, 64
Md. 151, 20 Atl. 1039, there was involved the threatened
forfeiture of the rights of a stockholder in a corporation
existing under the laws of the state of North Carolina, hence
foreign to the territorial jurisdiction of the courts of Mary-
land. Disposing of the contention there made that the stock-
holder was entitled to mandamus against the corporate au-
thorities to reinstate him in his rights as a stockholder, and
refusing to assume jurisdiction, the court observed:

"It may not be in all cases easy to draw a clear line of dis-
tinction between the acts of a corporation relating to its
internal management, and those which do not. But we ap-
prehend the distinction to be this: That where the act com-

10—83 WASH.

plained of affects the complainant solely in his capacity as a
member of the corporation, whether it be as stockholder,
director, president, or other officer, and is the act of the cor-
poration, whether acting in stockholders' meeting, or through
its agents, the board of directors, that then such action is the
management of the internal affairs of the corporation, and
in case of a foreign corporation, our courts will not take
jurisdiction, where, however, the act of the foreign corpora-
tion complained of affects the complainant's individual rights
only, then our courts will take jurisdiction, whenever the
cause of action arises here.

"The controversy in the case before us arises entirely out
of the internal management of the affairs of the company. It
is the complaint of a *stockholder*, that he has been deprived
of his rights, as a *stockholder*, by the illegal action of the
board of directors. His complaint is, that he is still a stock-
holder, and a member of the corporation, and entitled to his
vote at the stockholders' meeting, &c., but that these rights
have been withheld from him by the action of the directors,
and he seeks to be reinstated as a member of a foreign cor-
poration by the action of a Maryland court. He seeks this
through the extraordinary remedy of a *mandamus*, to compel
the board of directors to place on their books his name as a
stockholder, and thus to restore him to all the rights of a
member of the corporation, which the directors say he had
forfeited."

In *Royal Fraternal Union v. Lunday*, 51 Tex. Civ. App.
637, 113 S. W. 185, there was involved a threatened depriva-
tion of the rights of a member of the Union, a fraternal in-
surance association, by its officers at its home office, it being a
foreign corporation beyond the territorial jurisdiction of the
courts of Texas. The court disposed of the claimed right
of the insured to an injunction against the home officers of
the Union to prevent cancellation of his policy as follows:

"Putting that construction upon his petition most favor-
able to the appellee, his allegations amount to this: That the
appellant is a foreign corporation, with its domicile in the
state of Missouri, and is engaged in the business of issuing
policies of insurance against sickness, accident and death;
that it is doing business in this state under and by virtue of

a permit from the proper officer; that the appellee is the holder
of one of the appellant's policies of insurance, without nam-
ing the benefits agreed to be paid; that he has promptly paid
in full, as they accrued, all of the dues and assessments re-
quired of him by the terms of his policy, and is, therefore,
entitled to be regarded as a policy holder in good standing;
that notwithstanding those facts, the appellant is wrongfully
threatening to cancel and declare forfeited the policy issued
to the appellee; that unless the appellant is restrained from
so doing it will cancel and declare forfeited the aforesaid
policy of insurance; that the appellee is now over 60 years of
age, and if his policy of insurance is forfeited he will be with-
out protection, inasmuch as he will be unable, by reason of his
age, to obtain any further insurance. It thus appears, from
the allegations of the appellee that he is asking a court of
equity in this state to enjoin the officers and agents of a
foreign corporation, domiciled in another state, from doing
certain acts in and about their business affairs in that state.
The court below having granted the relief prayed for, let
us suppose that this court should affirm that judgment. The
question would then arise: how is such a decree to be enforced
in the event the officers and agents of the appellant company
should persist in doing the acts prohibited? Such a judg-
ment could only operate *in personam,* and obedience to the
court's mandate can be compelled only by an attachment of
the body of the contumacious individuals and the infliction
of some punishment. In the case before us all of the parties
against whom the order of the court is directed are perma-
nently domiciled beyond the territorial jurisdiction of the
court, and cannot be reached by any process issued there-
from. It is therefore evident that such a decree would be
utterly futile. Moreover, the appellant being a foreign cor-
poration, domiciled in another state, it is not within the
judicial province of a court of this state to undertake to su-
pervise and direct its internal affairs and management. *Clark
v. Mutual Reserve Fund Ass'n,* [14 App. D. C. 154], 43
L. R. A. 392; *Ebert v. Mutual Reserve Fund Life Ass'n,* 81
Minn. 116, 83 N. W. 506, 834 [84 N. W. 457]; 3 Cooley's
Briefs on Ins., p. 2841. It is true that there are instances
in which a court of equity situated in one state will enjoin
the performance of acts beyond its territorial jurisdiction,
but this seems to be limited to cases where the parties against

whom the injunction is sought reside within the jurisdiction of the court. *Bellows, etc., v. Rutland,* 28 Vt. 470; *Margarum v. Moon,* 63 N. J. Eq. 586, 53 Atl. 179; *Cole v. Cunningham,* 133 U. S. 107; 1 High on Inj., §§ 105, 106."

In *Taylor v. Mutual Reserve Fund Life Ass'n,* 97 Va. 60, 33 S. E. 385, 45 L. R. A. 621, 625, where the insured sought to have his claimed rights protected by injunction against officers of the company at its home office, which was foreign to the territorial jurisdiction of the courts of Virginia, the court observed:

"Process was served upon the agent of the association as provided by statute. The association appeared by counsel, and demurred to the bill. Its demurrer was sustained, and the bill dismissed. From that decree this appeal was allowed.

"Several grounds of demurrer are relied on, but the principal objection urged to the bill is that the case made and the relief sought would require the court to interfere with the internal management of a foreign corporation, a subject-matter over which the court has no jurisdiction. If this objection is well founded it is decisive of the case, and will render it unnecessary for us to consider the other grounds of demurrer. It seems to be well settled that courts will not interfere with the management of the internal affairs of a foreign corporation. Such questions are to be settled by the tribunals of the state which created the corporation. The reasons for such a rule are apparent. Courts other than those of the state creating it, and in which it has its habitat, have no visitorial powers over such corporation, have no authority to remove its officers, or to punish them for misconduct committed in the state which created it, nor to enforce a forfeiture of its charter. Neither have they the power to compel obedience to their orders nor to enforce their decrees. *Smith v. Mutual L. Ins. Co.,* 14 Allen 336; *North State Copper & Gold Min. Co. v. Field,* 64 Md. 151; *Condon v. Mutual Reserve Fund Life Ass'n,* Court of Appeals of Maryland (January term 1899); [89 Md. 99], 44 L. R. A. 149; 6 Thompson, Corporations, Sec. 8011.

"There is nothing in the act of Assembly approved May 18, 1887, entitled 'An Act in Relation to Insurance Companies and Associations upon the assessment plan' (Acts)

Extra Session 1887, Chapter 271, p. 348 &c., which changes the general rule upon the subject, and gives to the courts of this state the right to control or interfere with the management of the internal affairs of a foreign corporation doing business here.  Section 3 of that act provides, among other things, that no insurance company or association organized upon the assessment plan shall transact business in this state by an agent, unless it shall first authorize some person who is a resident of this state 'to act as its attorney, and to acknowledge service of process, or upon whom process may be served for and on behalf thereof, which service shall be taken and held to be as valid upon such corporation or association according to the laws of this or any other state.'

"The object of that provision of the act was to secure the residents of this state the benefit and protection of its own laws, and to confer upon its own courts jurisdiction to determine and enforce their rights where the subject-matter of the litigation was within their jurisdiction, or the remedy sought was within their reach.  It provides how the corporation can be brought into court, but it does not confer upon the courts, nor does it require such corporations to concede, any right to exercise authority over the organization, the corporate functions, nor the relations between the corporation and its members, nor to determine the rights and duties of the corporation or its members arising under the law of the state of its creation, and depending upon its local laws, nor deprive it of the right to plead a want of jurisdiction on the ground that the subject-matter of the suit, or the remedy sought, is beyond the reach of the court, or not within the sovereign power of the state from which the court derives its authority."

This is of value in showing that the fact that the statutes of a state make provisions for admitting of foreign life insurance associations to do business therein, and for appointment of an agent upon whom service of process may be made, do not enable the courts of the state to exercise extraterritorial jurisdiction to the extent of controlling the internal affairs of such association.  Dealing with this phase of the question in the light of such a statute, the following observations of the court in *Condon v. Mutual Reserve Fund Life*

*Ass'n,* 89 Md. 99, 118, 42 Atl. 944, 73 Am. St. 169, 44 L. R. A. 149, 154, are of interest here:

"The reasons for thus interpreting these provisions of the Code are conspicuously clear. There are obvious difficulties that would be encountered if the courts of one state undertook to adjust the internal affairs of a foreign corporation formed under the laws of a different state, and having its *habitat* within the borders of another sovereignty. The absence of a visitorial power over such a corporation and the absolute inability to enforce a forfeiture of its charter for a violation of the law, or to remove its officers for misconduct, or to punish them for malversations committed in the place of its domicile, are open and apparent obstacles in the court's pathway, should it assume to exert an extraterritorial jurisdiction. Besides all this, its lack of the means to do full justice, and its want of the machinery to enforce against the corporation in the place of its existence, any decree it might render in such a proceeding indicate, if they do not demonstrate, that the legislature never designed to confer a power, the exercise of which would or might be utterly fruitless and vain."

Our statute relating to the appointment of a resident agent for, and service of process upon, foreign fraternal beneficiary societies plainly must be viewed in this same light. Laws of 1911, p. 288, § 222 (3 Rem. & Bal. Code, § 6059-222); *Clark v. Mutual Reserve Fund Life Ass'n,* 14 App. D. C. 154, 43 L. R. A. 390; *Jackson v. Hopper,* 76 N. J. Eq. 592, 75 Atl. 568, 27 L. R. A. (N. S.) 658; *Kinney v. Mexican Plantation Co.,* 233 Pa. 232, 82 Atl. 93. These authorities, we think, are conclusive of the correctness of the disposition of the cause by the superior court. Our attention is called to *State ex rel. Cicoria v. Corgiat,* 50 Wash. 95, 96 Pac. 689. That case, however, involved the rights of a member in a fraternal benefit association organized under the laws of this state. The question of extraterritorial jurisdiction of the court did not stand in the way of the granting of such relief as was there held to be proper.

We conclude that the relief asked for by appellant is beyond the power of the courts of this state to grant. We refrain from discussing other questions involved touching the merits of the controversy.

The judgment is affirmed.

CROW, C. J., and MORRIS, J., concur.

CHADWICK and GOSE, JJ., (concurring)—We concur in the result. This action was brought prematurely in any event. The demand made upon the defendant was a reasonable one and sustained by the authorities. He was not called upon to subject his cause to the jurisdiction of the court of a foreign state. He was asked to show cause to the company, "in person or otherwise, why his benefit certificate should not be declared void under the rules and by-laws of the society." Instead of meeting this very proper demand at the bar of the society, he has rushed into court demanding that it be determined as a matter of law that the company is about to do him an injury, when under his contract the society has a preliminary right to inquire into the facts and pass its judgment thereon. It will be time enough for plaintiff to seek relief at the hands of the courts when the society has injured or threatened to injure him.