[No. 29265.    *En Banc.*    November 28, 1944.]

JOHN A. MEADE, *Respondent*, v. PACIFIC GAMBLE ROBINSON COMPANY, *Appellant.*[1]

[1]Reported in 153 P. (2d) 686.

*Ryan, Askren & Mathewson,* for appellant.

*Evans, McLaren & Lane,* for respondent.

MILLARD, J.—Plaintiff, who owns 8,845 shares of stock in Pacific Fruit & Produce Company, brought this action under the provisions of § 61 of the Delaware corporation statute, § 2093, p. 480, Revised Code of Delaware 1935, for the appointment by the King county superior court of a third appraiser who, together with two others previously appointed by the respective parties to the action, should determine the value of plaintiff's shares of stock. The provision reads as follows:

"Sec. 61. *Consolidation or Merger; Payment for Stock of Dissatisfied Stockholder:*—If any stockholder in any corporation of this State consolidating or merging as aforesaid, who objected thereto in writing, shall within twenty days after the date on which the agreement of consolidation or merger has been filed and recorded, as aforesaid, demand in writing from the corporation resulting from or surviving such consolidation or merger, payment of his stock, such resulting or surviving corporation shall, within three months thereafter, pay to him the value of his stock at said date, exclusive of any element of value arising from the expectation or accomplishment of such consolidation or merger. If within thirty days after the date of such written demand the corporation and such stockholder fail to come to an agreement as to such value of such stock, such stockholder may demand an appraisal of his stock by three disinterested persons, one of whom shall be designated by the stockholder, one by the directors of the resulting or surviving corporation and the other by the two designated as aforesaid and may serve written notice on such corporation designating therein one appraiser and requiring the corporation to designate a second appraiser within thirty days from the date of service of such notice. If within thirty days from the date of service of such notice the corporation shall have failed to designate a second appraiser or if the two appraisers first designated shall fail to designate a third appraiser within thirty days

from the designation of the second appraiser, such stockholder may apply to the Chancellor to designate a second and a third appraiser, or a third appraiser, as the case may be. The decision of the appraisers as to such value of such stock shall be final and binding upon the corporation and such stockholder."

Defendant demurred on the ground that the superior courts of this state do not have jurisdiction of the subject matter and the power to appoint an appraiser to appraise the stock of a Delaware corporation, which appointment must be made pursuant to the terms of the Delaware statute, giving the right to make such appointment to "the chancellor." The demurrer was overruled. Defendant answered, admitting each of the twelve paragraphs of plaintiff's petition for appointment of a third appraiser, and pleaded affirmatively:

"That a merger of the Pacific Fruit & Produce Company, Inc., a corporation, and Gamble-Robinson Company, a corporation, was occasioned by virtue of the laws of the State of Delaware and that all matters pertinent to and in connection with the said merger are subject to the State of Delaware and any interpretation of the Delaware law or remedies to participants is subject to the sound discretion of the Delaware courts and that the courts of the State of Washington are without jurisdiction of the subject matter or of the parties."

Plaintiff's demurrer to the affirmative defense was sustained. Defendant stood upon its answer, whereupon the court entered an order appointing George E. Maine of Seattle as the third appraiser. Defendant appealed.

The petition alleges that appellant Pacific Gamble Robinson Company is the surviving corporation resulting from a merger of Pacific Fruit & Produce Company, a corporation, and Gamble Robinson Company, a corporation, each of which was organized and existed under the laws of the state of Delaware. Pursuant to notice November 24, 1942, a special meeting of the stockholders of Pacific Fruit & Produce Company was held, at that corporation's principal office and place of conducting its business (city of Seattle), to consider a proposed merger with Gamble Robinson Com-

pany. The proposed merger was duly approved by the affirmative votes of the requisite number of shares of the capital stock of Pacific Fruit & Produce Company. Respondent, who owns 8,845 shares of stock of Pacific Fruit & Produce Company, voted against the merger at the stockholders' meeting November 24, 1942. Thereafter, pursuant to a similar call, a special meeting of the stockholders of Gamble Robinson Company was duly held and the merger was approved by the affirmative votes of the requisite number of shares of capital stock of that corporation. After approval by the requisite number of stockholders of both corporations, the agreement of merger was authorized and approved by each of the constituent corporations and filed in the office of the secretary of state of the state of Delaware. The name of the surviving corporation is Pacific Gamble Robinson Company.

Pursuant to § 61, corporation laws of Delaware, § 2093, p. 480, Revised Code of Delaware 1935 (quoted above), respondent demanded, within twenty days after the agreement of merger was recorded, of appellant corporation payment of the value of his shares of stock. Respondent and appellant failed to come to an agreement as to such value of respondent's stock within thirty days after the date of the written demand, whereupon respondent demanded an appraisal of his stock by three disinterested persons as provided by the above-quoted provisions of the Delaware corporation statute, and designated John P. Garvin of Seattle as one of the appraisers. Thereafter, appellant designated Stanley Minor of Seattle as a second appraiser. The two appraisers so designated could not agree upon the designation of a third appraiser. Alleging "That under the laws and constitution of the State of Delaware the Chancellor is a Judicial officer possessing and exercising original equity jurisdiction," respondent prayed that the superior court for King county appoint a third appraiser to act in conjunction with the two appraisers already appointed in the matter of ascertaining and determining the value of respondent's shares of stock in the manner provided by law.

Respondent moves for dismissal of the appeal and affirmance of the order of the trial court upon the grounds: (1) Appellant is not "aggrieved" by the order appointing the third appraiser; (2) the appeal was taken merely for delay; (3) no notice of appeal was served upon George E. Maine, who was appointed as an appraiser by the court and who thereafter filed his written acceptance of the appointment.

■ Inasmuch as appellant has a legitimate interest in the litigation, it is "aggrieved" by the order of the trial court. Implicit in the contract of respondent shareholder with the corporation is the agreement of respondent that, in the event of the consolidation or merger of the corporation in which he owned shares of stock with another corporation, the question of payment to the dissatisfied stockholder of the value of his shares of stock was one for determination under the laws of the state of Delaware in which the corporation was organized. That being so, only the courts of the state of Delaware have the power to make the appointment of the third appraiser, which is shown in respondent's petition. Appellant has a right to have an appraiser appointed by the proper tribunal and we agree with counsel for appellant that appellant is certainly aggrieved if it is forced to have the matter of appraisers of respondent's shares of stock determined by appraiser whose appointment was void.

There is no showing that the appeal was taken merely for delay.

■ The contention that the named appraiser was a party to the litigation who must be served with notice of appeal, is without substantial merit. The third appraiser appointed by the superior court is not within the purview of statutory requirement (Rem. Rev. Stat., § 1719 [P. C. § 7293]) that written notice of appeal shall be served on the prevailing party or his attorney. The appraiser appointed by the trial court was not a party to the action and he is not entitled to notice of an appeal. *Norbom Engineering Co. v. Cox & Co.*, 120 Wash. 675, 208 Pac. 87; *Deno v. Standard Furniture Co.*, 190 Wash. 1, 66 P. (2d) 1158. The motion to dismiss the appeal is denied.

It is respondent's position that statutes of the character of the above-quoted Delaware statute are designed to afford relief to a stockholder who does not desire to participate in a merger and that such statutes are to be liberally construed in favor of the dissenting stockholder. 15 Fletcher, Cyclopedia Corporations (Perm. ed.), § 7165.

It is insisted that under this principle no stockholder residing in this state should be required to go to Delaware and invoke the equity powers of its chancellor when, as in the case at bar, the principal office of the corporation is situated in this state.

Counsel for respondent further argue that the words "the chancellor" in the above-quoted Delaware statute do not indicate an intent that the power to appoint the third appraiser should be lodged only with that particular person, as under the Delaware judicial system there is only one chancellor and he presides over the only court possessing original jurisdiction. Counsel cite the following provision of the constitution of the state of Delaware and argue that there is no more significance in this use of the word "the" than for a statute of this state to speak of "the equity court":

"There shall be six State Judges . . . One of them shall be Chancellor, one of them Chief Justice and the other four of them Associate Judges." Delaware constitution, Art. IV, § 2.

"The Chancellor shall hold the Court of Chancery. This court shall have all the jurisdiction and powers vested by the laws of this State in the Court of Chancery." Delaware constitution, Art. IV, § 10.

It is further urged that appellant, in assuming that for a court of this state merely to name a third appraiser constitutes the exercise of visitorial power over a foreign corporation, misconceives the meaning of the exercise of visitorial power. Authorities are cited to the effect that, even where real visitorial power is involved, the local court has jurisdiction but may in its discretion decline to exercise it if by so doing the local court would be called upon to interfere with the internal affairs of the corporation. *Rogers v. Guaranty Trust Co.*, 288 U. S. 123, 77 Law Ed. 652, 53 S. Ct.

295, 89 A. L. R. 720; 17 Fletcher, Cyclopedia Corporations (Perm. ed.) 375, § 8427.

It follows, conclude counsel for respondent, that the trial court in naming a disinterested appraiser was not undertaking to interfere with or control any internal affairs of a foreign corporation even in a minor degree.

Appellant invokes the rule that a local court will not assume jurisdiction to interfere in the management of the internal affairs of a foreign corporation, even at the suit of a resident stockholder and even if the corporation may be doing business in the state in which the suit is brought and may have expressly or impliedly agreed to submit to the jurisdiction of the courts in suits against it and has a substantial portion or even all of its tangible property in the state and is for all practical purposes a local corporation except as to the place of its creation. *Tolbert v. Modern Woodmen,* 83 Wash. 287, 145 Pac. 183.

In *Beasley v. Mutual Housing Co.,* 39 F. (2d) 290, the court of appeals of District of Columbia held that courts will not interfere in controversies relating only to the internal management of the affairs of a corporation and such controversies must be settled by courts of the state creating the corporation. See, also, 17 Fletcher, Cyclopedia Corporations (Perm. ed.) 368, § 8425; *Beard v. Beard,* 66 Ore. 512, 133 Pac. 797, 134 Pac. 1196; *Rogers v. Guaranty Trust Co., supra.*

■ Where, as in the case at bar, the controversy necessitates interpretation of a statute of the state creating the corporation, the general rule against interference with the internal affairs of a foreign corporation is strictly applied. *Thompson v. Southern Connellsville Coke Co.,* 269 Pa. 500, 112 Atl. 533; *Mayer v. Oxidation Products Co.,* 110 N. J. Eq. 141, 159 Atl. 377; *O'Hara v. Frenkil,* 155 Md. 189, 141 Atl. 528; *Kimball v. St. Louis & S. F. R. Co.,* 157 Mass. 7, 31 N. E. 697, 34 Am. St. 250.

In *Graeser v. Phoenix Finance Co.,* 218 Iowa 1112, 254 N. W. 859, two old Delaware companies merged to form the surviving defendant corporation. The plaintiff owned certain shares of stock in one of the merged corporations.

He instituted an action in one of the district courts of Iowa and prayed that the value of his shares be fixed as of the date of the merger and that a judgment be entered in his favor for the value of his stock when so fixed. A decree was entered dismissing his petition and, on his appeal to the supreme court of Iowa, the decree was affirmed. In the course of its opinion, the court said:

"It appears from her petition and is plainly stated by the appellant in her brief and argument that this is not a suit to enjoin or to set aside the transaction, but is simply a suit to recover the value of the preferred stock held by her in the subsidiary corporations. The rights of the appellant as a holder of preferred stock in the St. Louis and Des Moines companies must, in the first place, be determined by the contract between her and these corporations. Under well-recognized rules, the provisions of the articles of incorporation and of the laws of the state of its domicile enter into and become a part of the contract between the stockholder and the corporation. 14 C. J. 535; 1 Fletcher on Corporations (2d ed.) § 164, p. 541; *Ontjes v. Bagley*, 217 Iowa 1200, 250 N. W. 17; *Traer v. Lucas Prospecting Co.*, 124 Iowa 107, 112, 99 N. W. 290; *Peters v. United States Mortgage Co.*, 13 Del. Ch. 11, 114 A. 598; *Jones v. Missouri-Edison Electric Co.* (C. C. A.) 144 F. 765, 770. . . .

"Even if the plaintiff and her assignor of the stock in question were not guilty of laches, we think that the question as to appellant's rights, if any, to be paid the cash value of her stock should not be determined by the courts of this state. The only assets owned by the Des Moines and St. Louis companies, after the sales and transfers, were the cash, bonds, and stocks of the Phoenix Finance Corporation which had been obtained as consideration for such transfers. If appellant were to be paid the cash value of her stocks as of the date of the sales and transfer, it is quite possible, and perhaps even probable, that the other stockholders in the Des Moines and St. Louis companies will not receive an equal share of the assets of these corporations on distribution. It seems to us that the determination of any right of appellant to receive cash for her stocks may necessarily affect the rights of other stockholders upon distribution of the assets of these corporations, and such other stockholders are not before the court in these actions. The law seems well settled that the courts of one state will not exercise jurisdiction in the internal affairs of a foreign corporation. 14a

C. J. 1327, and cases cited. *Boyette v. Preston Motors Corporation*, 206 Ala. 240, 89 So. 746, 18 A. L. R. 1376; *Hogue v. American Steel Foundries*, 247 Pa. 12, 92 A. 1073, 1074; *Wallace v. Motor Products Corp.* (D. C.) 15 F. (2d) 211, 213; *Id.* (C. C. A.) 25 F. (2d) 655; *Rogers v. Guaranty Trust Co.*, 288 U. S. 123, 129, 53 S. Ct. 295, 77 L. Ed. 652, 656. We believe that the relief sought by appellant as to her rights against the Des Moines and St. Louis Companies would require interference in the internal affairs of these companies, and that, for this reason, the courts of this state should decline to act."

See, also, *Koster v. Shenandoah Corp.*, 258 App. Div. 1079, 18 N. Y. S. (2d) 38, where it was held that actions brought by stockholders of a foreign corporation wherein it is alleged that the assets of such corporation were undervalued as a basis of consolidation, as the result of which the stockholders did not receive shares commensurate in value to their former holdings, which undervaluation resulted from the fraud of certain officers and directors of the corporation, motions of the defendants for dismissal of such actions should be granted, on the ground that questions which affect corporate structure of foreign corporations are of local administration and should be relegated to courts of the state under the laws of which the corporation was organized.

In *Klein v. Wilson & Co.*, 7 F. (2d) 772, plaintiff stockholder residing in New Jersey instituted a suit for the appointment of a receiver and the winding up of the affairs of a corporation organized and existing by virtue of the laws of the state of New York. The petition was denied on the ground that the courts of a state are without power to assume the general administration of the assets of a corporation of another state which are not within its territorial jurisdiction.

We agree with counsel for appellant that, if a court considers itself without power to decree liquidation of a foreign corporation, it follows logically that such court would and should refrain from entry of orders, the purpose of which was to liquidate a portion of the assets of a foreign corporation, as the appointment of appraisers with power to decide the amount to be paid for shares of stock of a foreign cor-

poration is, of course, a determination which has the effect of a decree of liquidation of that part of the corporation's assets as are represented by the shares of stock which are being appraised.

In *Boyette v. Preston Motors Corp.*, 206 Ala. 240, 89 So. 746, 18 A. L. R. 1376, plaintiff stockholders by bill in equity in the state of Alabama sought to compel the defendant corporation, which was created under the laws of the state of Delaware, to issue certain stock or to pay the par value of that stock to plaintiff. The opinion discloses that the corporation and all the defendant officers and directors of the corporation resided in Alabama and that all the property of the defendant corporation was in Alabama. The court denied relief, holding that it was an established principle that a corporation must dwell at the place of its creation and in its internal affairs be governed by the law of that place regardless of where else it might do business. The court cited Thompson on Corporations (2d ed.), §§ 5986, 6035, where the authorities are collected to the effect that reorganization, consolidation, and merger of corporations have no other source of authority than by statute; and whether there was reorganization, consolidation, or merger and the terms under which it was effected, depends upon authority of the law of the domiciliary state.

In the case at bar, respondent seeks relief under the provisions of the Delaware appraisal statute and, as stated above, any adjudication by the appraisers of the value of respondent's shares of stock would derive its validity from the terms of that statute, and the court of the state granting such specific relief is the proper forum to make the appointment of the appraisers. See *Hogue v. American Steel Foundries*, 247 Pa. 12, 92 Atl. 1073.

The entry of the Delaware corporation into this state for the purpose of doing business does not confer jurisdiction on the courts of this state to interfere with the internal affairs of the Delaware corporation. Jurisdiction to regulate or interfere with the internal affairs or management of a foreign corporation doing business in a state is not conferred by a statute which provides that lawful process,

served upon an agent of the foreign corporation authorized to receive such services, shall be of the same force and validity as if served on the corporation within the state. *Tolbert v. Modern Woodmen,* 83 Wash. 287, 145 Pac. 183; *Bradbury v. Waukegan & Washington Mining & Smelting Co.,* 113 Ill. App. 600; *Boyette v. Preston Motors Corp., supra.*

■ The statutory remedy for assessing the value of stock owned by those objecting to the merger or consolidation of corporations, must be followed. A stockholder, by becoming such, agrees that, in respect to the valuation of stock owned by him, he would be governed by the laws of the state creating the corporation.

Counsel for appellant correctly contend that the Delaware statute, under which respondent seeks relief, expressly gives the power to make the appointment of an appraiser only to the chancellor of the Delaware court. The Delaware legislature in using the word "chancellor" did not, as argued by counsel for respondent, mean to refer to a judge exercising general equity jurisdiction, otherwise it would have said that the stockholder may apply to *a chancellor* or to *a court of equity.* Section 21 of Art. IV of the constitution of the state of Delaware provides that, until the legislature of that state otherwise provide, the chancellor shall exercise all powers which any laws of the state vest in the chancellor, besides the general powers of the courts of chancery, and that the chief justice and associate judges shall each singly exercise all the powers which any laws of that state vest in judges singly of the superior court. Clearly, when the legislature of Delaware enacted § 61 of the corporation law, quoted above, designating the chancellor to appoint appraisers, the legislature had in mind, in view of § 21, Art. IV of the Delaware constitution, that the chancellor, and he alone, would have the exclusive power of appointing the appraiser. This is sustained by the opinion of the court of chancery of Delaware in *Schenck v. Salt Dome Oil Corp.,* 34 A. (2d) (Del.), 249, where the court said:

"The rights and powers given by Section 61 are in no sense declaratory of the ancient equity jurisdiction of the English Court of Chancery, and are not within the original

inherent jurisdiction of this Court (Art. IV, § 10, Const. 1897); they are additional powers given by the Legislature, pursuant to the provisions of Article IV, Section 20 of the Constitution."

The legislature of Delaware in using the word "chancellor" was referring to Delaware's own court of chancery. *Schenck v. Salt Dome Oil Corp., supra,* clearly discloses that the power conferred by § 61 of the Delaware corporation law was not an inherent power but one which was created by specific legislative enactment. Manifestly, while the legislature of the state of Delaware could confer this additional power on its own judiciary, it could not enlarge the jurisdiction of the courts of a foreign state. The statute of the state of Delaware invoked by respondent grants the power of appointment of an appraiser solely to the chancellor of the Delaware court, to which respondent agreed when he purchased his shares of stock, and he can only obtain relief by compliance with the terms of the statute which he has invoked.

The question presented in the case at bar is not whether the courts of this state may appoint appraisers to determine the value of the shares of stock of a domestic corporation, but whether our courts have the power to appoint appraisers to determine the value of the shares of stock of a Delaware corporation, in view of a Delaware statute requiring appointment to be made by the chancellor of the Delaware court.

The case at bar is governed by the provisions of § 61 of the Delaware corporation statute, § 2093, p. 480, Revised Code of Delaware 1935, quoted above. It is clear from a reading of session laws of Delaware 1943, chapter 125, § 6, p. 426, amending § 61 of the 1935 statute, that the statute, both prior to and after amendment, required the appointment of the appraisers to be made by the chancellor of the Delaware court. The reworded portion of § 61 to which we refer reads as follows:

"If during said period of thirty days the corporation and any such stockholder fail to agree as to the value of such stock, any such stockholder, or the corporation resulting from or surviving such consolidation or merger, may by

petition filed in the Court of Chancery within four months after the expiration of said period of thirty days demand a determination of the value of the stock of all such stockholders by an appraiser to be appointed by the Chancellor.

"Upon the filing of any such petition by a stockholder, service of a copy thereof shall be made upon the corporation, which shall within ten days after such service file in the office of the Register in Chancery in which said petition was filed a duly verified list containing the names and addresses of all stockholders who have demanded payment of their shares and with whom agreements as to the value of their shares have not been reached by the corporation. If the petition shall be filed by the corporation, the petition shall be accompanied by such a duly verified list. The Register in Chancery shall give notice of the time and place fixed for the hearing of such petition by registered mail to the corporation and to the stockholders shown upon said list at the addresses therein stated, and notice shall also be given by publishing a notice at least once a week for two successive weeks, the second publication to appear at least one week before the day of the hearing, in a newspaper of general circulation published in the City of Wilmington, Delaware. The Court shall have power to direct such additional publications of notice as it may deem advisable. The forms of the notices by mail and by publication shall be approved by the Court.

"After the hearing of such petition the Court shall determine the shareholders who have complied with the provisions of this section and become entitled to the valuation of and payment for their shares, and shall appoint an appraiser to determine such value. Such appraiser shall have power to examine any of the books and records of the corporation the stock of which he is charged with the duty of valuing, and he shall make a determination of the value of the shares upon such investigation as to him may seem proper. The appraiser shall also afford a reasonable opportunity to the parties interested to submit to him pertinent evidence on the value of the shares. The appraiser, also, shall have such powers and authority as may be conferred upon Masters by the Rules of the Court of Chancery or by the order of his appointment.

"The appraiser shall determine the value of the stock of the stockholders adjudged by the Chancellor to be entitled to payment therefor and shall file his report respecting such value in the office of the Register in Chancery and notice of the filing of such report shall be given by the Register in

Chancery to the parties in interest. Such report shall be subject to exceptions to be heard before the Court both upon the law and facts. After hearing exceptions to the said report the Court shall by its decree determine the value of the stock of the stockholders entitled to payment therefor and shall direct the payment of such value to the stockholders entitled thereto by the resulting or surviving corporation upon the transfer to it of the certificates representing such stock, which decree may be enforced as other decrees in the Court of Chancery may be enforced, whether such resulting or surviving corporation be a corporation of this State or of any other State of the United States of America. The shares of the surviving or resulting corporation into which the shares of such dissenting stockholders would have been converted had they assented to the consolidation or merger shall have the status of authorized and unissued shares of the surviving or resulting corporation, as the case may be."

That a state, in permitting a corporation to acquire a domicile within its borders, may require such corporation to comply with reasonable regulations needs no citation of sustaining authority. The requirement that appraisers of the capital stock of the corporation be appointed in a certain way or by the court of the domiciliary state is in a different class from a requirement that individual common-law or statutory rights be litigated only in the courts of the state enacting the statute. True, a substantive statutory right originating in one state may ordinarily be enforced in other states under accepted principles of conflict of laws. The law governing this matter is correctly stated as follows:

"It is universally acknowledged that whenever by common law a right of action has become fixed and a legal liability incurred, that liability, if the action is transitory, may be enforced and the right of action pursued in the courts of any state which can obtain jurisdiction of the defendant, provided it is not against the public policy of the laws of the state where it is sought to be enforced. Under the broad principles of comity heretofore noticed, the courts of one state will enforce substantive rights existing under the laws of another state if not contrary to the public policy of the forum." 11 Am. Jur. 308, § 10.

"The fundamental question determinative of the enforcement of statutory rights arising in another state is whether there is a substantive right originating in one state and a

corresponding liability which follows the person against whom it is sought to be enforced into another state. Such a right, arising under a local statute, will be enforced ex comitate in another state unless there is a good reason for refusing to enforce it. It will be enforced, not because of the existence of the statute, but because it is a right which the plaintiff has legitimately acquired and which still belongs to him.

"There are several situations in which it is well established that the forum will not enforce a foreign statutory right. Thus, a right given by statute will not be enforced by the courts of another jurisdiction if the statute is against the policy of the law of the forum, if the enforcement of the right would work injustice to the citizens of the state where the action is brought, if the right, by the terms of the statute creating it, is to be enforced by prescribed proceedings within the state of its enactment, or if it is of such a kind that, with a due regard for the interests of the parties, a proper remedy can be given only in the jurisdiction where it is created.

"There is a marked distinction between the refusal to enforce a right created by statute which is to be enforced by prescribed proceedings within the state where the statute is in effect and a refusal to decline jurisdiction because the statute of the state where a statutory or common-law tort is created or arises seeks to prevent the enforcement of the right in any other state." 11 Am. Jur. 310, § 11.

No good purpose would be served by a lengthy discussion of the question whether in the case at bar the superior court for King county has violated the doctrine of visitorial powers. Respondent is bound by the terms of the statute incorporated in his contract under which he seeks relief.

The judgment is reversed, with direction to the trial court to dismiss the action.

SIMPSON, C. J., ROBINSON, JEFFERS, and GRADY, JJ., concur.

BLAKE, STEINERT, BEALS, and MALLERY, JJ., dissent.